```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ALABAMA
                           MIDDLE DIVISION
```

RANDOLPH DAVIDSON,          )
                            )
    Plaintiff,              )
                            )   CIVIL ACTION NO.
v.                          )
                            )   CV-96-AR-2501-M
                            )
QUORUM HEALTH GROUP, INC.,  )
et al.,                     )
                            )
    Defendants.             )

*FILED 97 JUL 14 AM 9:25 U.S. DISTRICT COURT N.D. OF ALABAMA*

**ENTERED JUL 14 1997**

### MEMORANDUM OPINION

The court has before it a motion for summary judgment filed by defendants, Quorum Health Group, Inc. and QHG of Gadsden, Inc., d/b/a Gadsden Regional Medical Center ("GRMC"), in the above-entitled action. Defendants ask for judgment on the Employment Retirement Income Security Act ("ERISA") and the Age Discrimination in Employment Act ("ADEA") claims of plaintiff, Randolph Davidson ("Davidson"). Subsequent to defendants' Rule 56 F.R.Civ.P. filing, plaintiff moved to voluntarily dismiss his ERISA claim. Accordingly, plaintiff's action will be dismissed as to his ERISA claim. The only remaining contested claim arises from the ADEA. For the reasons stated below, this court determines that no genuine issues of material fact exist and that defendants are entitled to

judgment as a matter of law.

## A. Pertinent Facts

Davidson was hired by defendants on March 29, 1982, as a "floor mechanic". He was later reassigned and became an incinerator operator. Davidson and fifty-three of his co-workers were terminated on August 24, 1995, as part of an apparent Reduction in Force ("RIF") by GRMC. Davidson was sixty years old when he was fired. The decision to implement a firm-wide RIF was made by defendants' Executive Committee. The RIF was apparently activated because of inefficient staffing and firm restructuring. Procedures were established by which certain positions, and personnel, would be targeted for elimination. This reorganization was made even though the hospital was apparently meeting its financial goals. The RIF targeted two distinct groups of workers for elimination. The first group consisted of workers whose positions had been eliminated through "reengineering or work redesign within a department or throughout the organization" and whose positions therefore no longer existed. (Plaintiff's Exh. 8). The second group consisted of those employees whose work performance was below par. Employees in the latter group included those who had received:

(1) final written notice within previous twelve months; [or]

2

    (2) verbal and/or written performance counseling as documented with the associate's personnel record; [or]

    (3) the most recent performance evaluation on file indicating a below satisfactory rating (✓-) in two or more areas of evaluation. This includes failure to achieve skill competencies as defined by department standards.

    Associates whose positions [were] targeted as a result of performance related issues [were] not eligible for rehire.

(Plaintiff's Exh. 8). This plan was approved by GRMC's CEO, Michael R. Blackburn ("Blackburn"), who was 43 years old on the date of plaintiff's termination.

    Davidson fell into the latter group. During his tenure at GRMC, Davidson accumulated a less than adequate overall performance record. Davidson's personnel profile report, made by his supervisor, Doug Blackwell ("Blackwell"), who was 39 years old on the date of plaintiff's termination, shows the following:

    1. On October 26, 1993, a Mrs. Morton, complained about Davidson's rude behavior and asked that he not be "sent back" to her work area.

    2. On January 1, 1994, a Mrs. Wolf complained about Davidson and said "that man better not come up here no more."

    3. On February 25, 1994, Mrs. Janice Roberts complained about Davidson's behavior and competence. She said he was a "pain." Mr. Danny Holderfield, ("Holderfield), who was 45 years old on the date of plaintiff's termination, a department director who was Blackwell's supervisor, was notified of the complaint.

4. A call was made to Blackwell on an unspecified date from "Carol from Goodyear" stating Davidson did not follow her instructions.

5. On September 15, 1994, a memorandum was written by Holderfield noting that Davidson had improperly activated the halon system in a liprotripsey trailer. The cost for filling the halon system was estimated at one thousand dollars. Holderfield noted, "[t]he incident could have been avoided if Mr. Davidson had used his head and read what was written on the pull system."

6. On September 27, 1994, a memorandum was written by Holderfield noting that since October 1993, he had received sixteen documented complaints about Davidson's work habits and that he had addressed such complaints with Davidson. He noted that if Davidson did not improve his performance soon, he would be terminated.

7. On February 1, 1995, it was noted that plaintiff was not doing his night work. Davidson attempted to explain that he did not have the time to do such work and that he was having problems with other employees.

8. On March 15, 1995, Davidson did not respond to an "operator" call to fix a "tube system." The call was answered by another employee who later saw Davidson drinking coffee with security guards. Davidson apparently admitted to having heard the call and to not responding.

9. On March 30, 1995, Davidson complained about working with a co-worker. He was informed that he would need to work more amicably with his associates. He was informed that complaints concerning his ability to work well with others had been brought by other employees.

10. On March 30, 1995, Scott Gregory complained that Davidson had not completed his assigned task of cleaning and maintaining certain "convectors."

11. On March 30, 1995, Joe Watson complained that plaintiff did not check on calls that were made to him.

12. On April 4, 1995, there was some controversy between a Mrs. Jones and Davidson that was reported to supervisors.

13. On May 1-2, 1995, plaintiff was reassigned from his job as a floor mechanic to his job as an incinerator operator. This was apparently done in an attempt to alleviate plaintiff's personality conflicts with other employees. It was noted that plaintiff was moved to the incinerator job as an accommodation to him so that he could keep his job.

14. On May 9, 1995, it was noted that Davidson's "attitude toward [the incinerator] job is not very good . . . ." Davidson was again reminded that he needed to make an attempt to get along with his co-employees.

15. On May 11, 1995, there was an altercation between Blackwell and Davidson. Davidson had apparently complained about some aspect of his employment and threatened to secure the services of counsel to remedy the problem. Blackwell directed Davidson into Holderfield's office where the three discussed the problem. Blackwell complained that Davidson was constantly creating discontent in his department. Blackwell told Holderfield that he "had enough with this excessive talking idiot," (Davidson), and that he wanted the situation resolved. Blackwell recommended that Davidson be fired. Davidson countered that Blackwell and another employee "rode" Davidson too often and that Blackwell had been looking to have Davidson fired. Holderfield did not fire plaintiff at that time.

16. On May 11, 1995, Blackwell explained to Davidson again that he believed his work habits and personality were unacceptable and that it was his position that Davidson should be fired.

17. On June 6, 1995, it was noted that Davidson was doing well with this job. However, his conflicts with other employees was still a problem.

18. On July 1, 1995, it was noted that Davidson was

5

>    doing better in his employment.
>
>    19.  On July 24, 1995, Davidson complained about another employee, a Mr. Watson, and told Blackwell that "if Joe cusses [me] out again [I] will have to take care of the problem." Blackwell told Davidson that a fight would not be tolerated.

(Defendants' Brief in Support of Summary Judgment, Exh. A). Davidson's May 11, 1995 performance evaluation noted an overall satisfactory rating. However, in two categories, productivity and communication, he was rated as unacceptable--he received two ✓-(s) on his evaluation report for these areas. Receiving the two ✓-(s) qualified Davidson for termination under the RIF performance guidelines.

Under the RIF guidelines, supervisors were requested to recommended certain personnel for termination if they fell within one of the two targeted groups. Blackwell was instructed to choose someone for termination from the Engineering Department. He chose Davidson. Davidson met all of the criteria under the performance reduction guidelines and was terminated. He was the oldest person in the Engineering Department and the only person in that department who was terminated.

Davidson and Blackwell were obviously not on the best of terms. According to Davidson's deposition, in 1993 Blackwell told plaintiff that he had just gotten rid of a Jerry Baker, and told

6

plaintiff "your ass is going to be next." (Plaintiff Depo. at 10-11). Apparently, Blackwell also referred to plaintiff as "old man" on between five and ten occasions. Davidson stated in his deposition, "Any time that we had any conversation, he [Blackwell], was, 'You are old enough to retire, you ought to get on out of here.'" (Plaintiff Depo. at 12). It is unclear from the evidence whether this was a direct quote from Blackwell.

Plaintiff contends that it was Blackwell's animus that caused him to be fired. Plaintiff, in an affidavit, tries to offer explanations for the negative citations on his personnel report, including hearsay evidence that such reports were never made.

Davidson also offered evidence that in twelve departments only the oldest employees were terminated. However, numerous young persons were also terminated throughout GRMC. The average age of the GRMC employees at the time of the RIF was 40.63 years old, the average age after the RIF was 40.46 years old. The average age of those persons terminated was 41.81 years old. There was therefore no change in the overall age of the workforce. There is no indication as to what the expected age of those fired should have been or whether there was any deviation from that expected number. If there was a deviation, there is no evidence that the deviation was statistically significant.

### B. Summary Judgment Standard

Rule 56 states, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

F. R. Civ. P. 56(c). As stated by the Eleventh Circuit, "[s]ummary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994).

### C. Legal Analysis

Plaintiff may choose one of three ways to show age discrimination under the ADEA to establish a prima facie case: (1) direct evidence of discriminatory intent; (2) statistical proof of disparate treatment; or (3) meeting the somewhat modified test of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *See Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 439 (11th Cir. 1996), *cert. denied*, ___U.S.___, ___S.Ct.___, 1997 WL 221333 (1997). Defendants contend that plaintiff has failed to proffer any evidence that is sufficient to meet any one of these tests. Defendants further argue that if

8

plaintiff did meet his burden under the circumstantial test, defendants have offered an unrebutted, legitimate, non-discriminatory reason for the employment decision. For the reasons articulated below, this court agrees.

### 1. Direct Evidence

As the Eleventh Circuit has explained, in discussing an ADEA claim based on RIF:

> "Direct evidence of discrimination would be evidence which if believed, would prove the existence of a fact [in issue] *without inference or presumption.*" *Carter v. City of Miami,* 870 F.2d 578, 581-82 (11th Cir. 1989)(emphasis added); *accord Castle v. Sangamo Weston, Inc.,* 837 F.2d 1550, 1558 n.13 (11th Cir. 1988); *Rollins,* 833 F.2d at 1528 n.6. "[O]nly the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter,* 870 F.2d at 582. One example of direct evidence would be a management memorandum staying, "Fire Earley--he is too old."

*Earley v. Champion Int'l Corp.,* 907 F.2d 1077, 1081 (11th Cir. 1990). Davidson's suggestion that Blackwell referred to him as "old man" on between five to ten occasions, does not meet this exceedingly stringent test. Neither does Davidson's apparent assertion that Blackwell told Davidson, "you are enough old to retire, you ought to get on out of here." These statements, while disparaging, do not indicate, standing alone, discriminatory intent in Davidson's firing. Indeed, coupled with other disparaging

9

remarks made by Blackwell, including calling plaintiff an "excessive talking idiot" these statements merely show Blackwell's dislike of plaintiff personally, not animus based on age.

### 2. Statistical Evidence

There is no statistical evidence in this case, merely numbers. There is no comparing and contrasting of expected number of those fired to the actual number of employees who were fired. "Such raw figures are seldom useful because they provide no framework for analysis." *Langston v. Carraway Methodist Hospitals of Ala.*, 840 F. Supp. 854, 863 (N.D. Ala. 1993). "While statistics are often important in class actions and disparate impact cases, they 'are of relatively low importance in a case of individual disparate treatment.'" *Id.* at 863 (quoting *Gilty v. Village of Oak Park*, 919 F.2d 1247, 1253 n.8 (7th Cir. 1990)). "Raw unadorned figures" cannot and do not support a prima facie disparate treatment claim in this case. *See id.*

### 3. Circumstantial Evidence

The Eleventh Circuit has

> set forth a slightly different variation of the *McDonnell Douglas* test in an ADEA case involving "reduction in force." The plaintiff had to show (1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the

10

> time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude the employer intended to discriminate on the basis of age in reaching the decision at issue.

*Isenbergh*, 97 F.3d at 439-40 (11th Cir. 1996). The court will assume that plaintiff has met this burden.

When a plaintiff establishes a prima facie case by circumstantial evidence, an intermediate burden of production shifts to defendant to show a legitimate, non-discriminatory reason for its employment decision. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). Defendants have proffered such a reason. Due to a RIF, a reasonable business decision was made to fire two classes of employees, those whose jobs were obsolete and those who failed to perform adequately in their present positions. As the evidence shows, plaintiff fell squarely into the latter group and was fired for this reason.

> Once a defendant satisfies its intermediate burden of production, and the initial presumption of discrimination accompanying the prima facie case has been eliminated the plaintiff has the opportunity to discredit the defendant's proffered explanation for its decision.

*Id.* Plaintiff has failed to adduce any evidence that would suggest defendants' proffered employment decision was pretextual. The only "evidence" offered in support of a pretext argument are that a Wilma Bearden was terminated for her age even though she had

11

an "excellent performance record", and that defendants fabricated plaintiff's personnel file. The first factor is irrelevant[1] and the second is unsupported by any evidence. Because Davidson has not shown pretext, and because the presumption created by his establishment of a prima facie case based on circumstantial evidence has fallen away, and further because plaintiff has not established a prima facie case of discrimination by either direct or statistical evidence, defendants' motion for summary judgment is due to be granted.

### 4. Disparate Impact

Plaintiff claims that his so-called "statistics", and other evidence, if they do not support a disparate treatment claim, support a disparate impact claim. This court is persuaded by the Tenth Circuit's opinion in *Ellis v. United Airlines, Inc.*, 73 F.3d 999 (10th Cir. 1996), *cert. denied*, ___U.S.___, 116 S.Ct. 2500 (1996), the only circuit court of appeals to address this issue head on, that the statutory language of the ADEA cannot support a disparate impact claim. The Tenth Circuit noted:

> Section 623(a)(1), which contains the ADEA's explicit

---

[1] For what it is worth, this court notes that Wilma Bearden's "excellent employment record" did not dissuade another member of this court from finding that Bearden did not establish a prima facie case of discrimination against Quorum Health or Gadsden Regional Medical Center, in a related case. *See Bearden v. Quorum Health*, CV-96-L-0968-M (N.D. Ala. Jan. 14, 1997).

12

prohibition of discriminatory refusals to hire, specifically proscribes only decisions not to hire *because* of someone's age. The most obvious reading of the clause, "because of such individual's age," is that it prohibits an employer from intentionally treating someone differently based on his or her age. It would be a stretch to read the phrase "because of such individual's age" to prohibit incidental and unintentional discrimination that resulted because of employment decisions which were made for reasons *other than age. Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611-13, 113 S. Ct. 1701, 1707, 123 L. Ed.2d 338 (1993)("The ADEA requires the employer to ignore an employee's age . . . ; it does not specify further characteristics that an employer must also ignore.").

*Ellis*, 73 F.3d at 1007. Because disparate impact is not cognizable under the ADEA, Davidson's disparate impact claim is due to be dismissed.

### D. Conclusion

For the aforementioned reasons defendants' motion for summary judgment is due to be granted and plaintiff's action dismissed with prejudice. A separate and appropriate order will be entered.

DONE this 14th day of July, 1997.

*[signature]*
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT COURT